**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE MOORE on behalf of himself    :
and others similarly situated,    :
   :
      Plaintiff,    :    Case No. 1:19-cv-02948
   :
v.    :
   :
CRS MARKETING LLC, SCOTT    :
SHAPIRO and SEAN T. DUFFIE    :
   :
      Defendants.    :
   :

---

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1.     Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     CRS Marketing LLC ("CRS Marketing") including their agent Sean T. Duffie and President Scott Shapiro, or through a vendor of theirs, made pre-recorded telemarketing calls to the residential telephone number of Plaintiff in violation of the TCPA.

3.     The Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4.      A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff George Moore is a resident of Illinois in this District.

6.      Defendant CRS Marketing LLC is a limited liability company with an address of 1510 NW 101 Ave. in Plantation, FL 33322. CRS Marketing has a registered agent of Corporate Creations Network, Inc., 11380 Prosperity Farms Road, Suite 221E in Palm Beach Gardens, FL 33410. CRS Marketing conducts business, makes telemarketing calls and sells insurance in this District, as it did with the Plaintiff.

7.      Defendant Scott Shapiro is an individual and the President of CRS Marketing, with an address of 1510 NW 101 Ave. in Plantation, FL 33322. Mr. Shapiro directs the business of CRS Marketing, including the making of telemarketing calls into this District.

8.      Defendant Sean T. Duffie is an insurance agent with CRS Marketing, and has an address of 1510 NW 101 Ave. in Plantation, FL 33322. Mr. Duffie, through telemarketing calls he has authorized, and through insurance he sells, as he did with the Plaintiff, does business in this District.

## Jurisdiction & Venue

9.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA Background

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Pre-Recorded Telemarketing Calls

12.     The TCPA makes it unlawful to initiate pre-recorded calls to residential telephone numbers and provides a private cause of action to persons who receive such calls.  *See* 47 U.S.C. § 227(b)(3).

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The TCPA's Identification Requirements

15.     The TCPA implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented adequate internal procedures. 47 C.F.R. 64.1200(d).  Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls.  47 C.F.R. 64.1200(d)(1)-(6). This includes the requirements that "a person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *See* 47 C.F.R. 64.1200(d)(4).

The Continued Problem of Automated Telemarketing Calls

16.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

18.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

19.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

20.     Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

Individual Liability

21.     The TCPA provides for individual liability when an agent or employee directly participated in, or personally authorized, the violative conduct.

22.     This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

23.     Here, Mr. Duffie did just that, by authorizing the pre-recorded calls that were sent to Mr. Moore so that he could attempt to sell him an insurance policy.

24.     Furthermore, Mr. Shapiro, who oversees the telemarketing business of his company, personally authorized the telemarketing at issue that Mr. Duffie engaged in to try to generate new business for CRS Marketing.

Illinois Automatic Telephone Dialers Act

25.     In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/15(d).  The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees.  815 ILCS 305/30.

26.     Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

## Factual Allegations

Calls to Mr. Moore

27.     The telephone number in question, (727) 753-XXXX, is a residential number.

28.     The number has been on the National Do Not Call Registry for more than 31 days prior to the receipt of the calls at issue.

29.     Mr. Moore has never removed his residential telephone number from the National Do Not Call Registry.

30.     In 2018, Mr. Moore received more than a dozen pre-recorded telemarketing call from CRS Marketing, or a vendor they were using.

31.     The calls came on at least the following dates:

- May 29, 2018

- June 1, 2018

- June 6, 2018

- June 15, 2018

32.     The calls were offering health insurance and did not identify the company or provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

33.     After receiving months of calls, Mr. Moore finally responded to a call on July 10, 2018 and proceeded through the scripted sales pitch, where he was offered an Agentra insurance policy.

34.     Mr. Moore contacted Agentra and was informed that the Defendants brought Agentra his policy, confirming the Defendants' involvement in the pre-recorded calls.

35.     The Plaintiff originally brought this matter against Insurance Line One, LLC.

36.     Shortly after filing, Agentra contacted counsel for the Plaintiff to clarify that it was CRS Marketing that had brought Agentra the policy with Mr. Duffie, not Insurance Line One, LLC.

37.     Plaintiff and all members of the class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance.  The calls also occupied Plaintiff's telephone line from legitimate communication.

38.     Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

**Class Action Allegations**

39.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States:

IDENTIFICATION CLASS

All natural persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

AUTODIALED TCPA CLASS

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) through the use of a prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

IL ATDA SUBCLASS

All Illinois residents to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) through the use of a prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

40.     Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

41.     The classes as defined above are identifiable through phone records and phone number databases.

42.     The potential class members number at least in the thousands.  Individual joinder of these persons is impracticable.

43.     Plaintiff is a member of the classes.

44.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

8

a.      Whether Defendants violated the TCPA by calling individuals without adequate identification procedures;

b.      Whether Defendants' calls are solicitations;

c.      Whether Defendants placed calls without obtaining the recipients' prior express written consent for the call;

d.      Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

45.      Plaintiff's claims are typical of the claims of class members.

46.      Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and is represented by counsel skilled and experienced in class actions, including TCPA class actions.

47.      The actions of the Defendants are generally applicable to the classes as a whole and to Plaintiff.

48.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

49.      The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

50.      Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA's Do Not Call Provisions

51.　　Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52.　　The foregoing acts and omissions of the Defendants constitute violations of the FCC's regulations implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity.  47 C.F.R. 64.1200(d).

53.　　The Defendant failed to properly identify itself in the pre-recorded message telemarketing calls;

54.　　The Defendants' violations were willful and/or knowing.

### Count Two:
### Violation of the TCPA's Automated Telemarketing Call Provisions

55.　　Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

56.　　The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's residential telephone line using a pre-recorded message, or (b) by the fact that others made those calls on their behalf.

57.　　The Plaintiff also seeks injunctive relief in the form of prohibiting the Defendants from using pre-recorded messages, absent emergency circumstances.

58.　　The Defendants' violations were negligent and/or willful.

**Count Three:**
**Violations of the ATDA, 815 ILCS 305/1 *et seq.***

59.     Plaintiff realleges and incorporates the foregoing allegations as if set forth fully

herein.

60.     The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer

without the consent of the called party."  815 ILCS 305/30(b).

61.     Under the ATDA, an "autodialer" or "autodialer system" is defined as "any

telephone dialing or accessing device, machine, computer or system capable of storing telephone

numbers which is programmed to sequentially or randomly access the stored telephone numbers

in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).  A

"recorded message" refers to "any taped communication soliciting the sale of goods or services

without live voice interaction."  815 ILCS 305/5(c). [1]

62.     The Defendants did not have the consent of Plaintiff or the other members of the

ATDA Sub-Class to play a prerecorded message placed by an autodialer.

63.     Nonetheless, the Defendants called the phones of Plaintiff and the other members

of the ATDA Sub-Class using a telephone dialing or accessing device, machine, computer or

system capable of storing telephone numbers which is programmed to sequentially or randomly

access the stored telephone numbers in order to automatically connect a telephone with a

recorded message.  No human being physically dialed each digit of Plaintiff's or the other ATDA

Sub-Class members' phone numbers to connect their telephones with a recorded message.

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a
burglar alarm system, voice message system or fire alarm system."  815 ILCS 305/5(a).

64. Consequently, Defendants violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other ATDA Sub-Class members, without such persons' consent.

65. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the ATDA Sub-Class were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

### Relief Sought

For himself and all Classes members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and the Illinois ATDA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated this 8th day of May, 2019.

Respectfully submitted,

**PARONICH LAW, P.C.**

By: /s/ *Anthony Paronich*
    Email: anthony@paronichlaw.com
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    Ph. 617-485-0018
    Fax: 508-318-8100

**HANSEN REYNOLDS LLC**

Alan W. Nicgorski
Email: anicgorski@hansenreynolds.com
301 N. Broadway, Suite 400
Milwaukee, WI 53202
Ph. 414-273-7676
Fax: 414-273-8476

Michael C. Lueder
Email: mlueder@hansenreynolds.com
150 S. Wacker Drive, Suite 2400
Chicago, IL 60606
Ph. 414-273-7676
Fax: 414-273-8476

*Attorneys for Plaintiff*